## No. 10,216.

WM. R. KER, ADMINISTRATOR, ET AL. VS. THOMAS E. EVERSHED ET AL.

| 41 | 15 |
|---|---|
| 51 | 1008 |
| 41 | 15 |
| '106 | 791 |
| 41 | 15 |
| 108 | 552 |
| 41 | 15 |
| 111 | 275 |
| 41 | 15 |
| 116 | 955 |

1. When parties reduce their contracts to writing and when the terms of the writing exhibit no uncertainty or ambiguity as to the nature, the object and the extent of the agreement, it is presumed that the writing expresses the true and complete undertaking of the parties.

2. Ambiguous contracts may be explained or controlled by proof of unambiguous circumstances; but unambiguous contracts cannot be destroyed by ambiguous circumstances.

3. Equity may reform and correct even contracts unambiguous on their face on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein: but to support relief there must be clear proof of the antecedent contract and of the error in committing it to writing.

4. When a mortgage creditor proceeds *via ordinaria* and obtains a personal judgment for money as well as a recognition of his mortgage, when he issues thereupon an ordinary *fi. fa.* under which the property of his debtor is seized and sold, the title of the purchaser at such sale rests, not upon the mortgage, but on the sale, and the personal judgment being valid, the title would be good notwithstanding any defect in the mortgage, or even if no mortgage had ever existed.

5. The purchaser at a judicial sale acquires what is sold—no more and no less. His title cannot be enlarged or diminished by any error as to the extent of the thing sold, not resulting from any defect in the proceedings or induced by any fraud or misrepresentation. Therefore, the taking possession of more or less than was sold, through error, cannot extend or restrict his title, if such possession or abandonment has not given rise to prescription.

APPEAL from the Civil District Court for the Parish of Orleans.
*Monroe, J.*

*E. J. Meral, F. Michinard, A. J. Ker* and *Chas. F. Claiborne* for Plaintiffs and Appellees:

It is a plain and elementary legal proposition that errors of names. description and numbers in private or public acts will be corrected upon proper evidence so as to conform to facts and to the intention of the parties. 36 Ann. 549, 870; 35 Ann. 560; 33 Ann. 1033; 26 Ann. 545; 20 Ann. 211; 1 Greenl. Ev. § 296 Ann.; 1 H. D., p. 541, No. 6.

The manner in which parties have executed a contract furnishes a guide for its interpretation. C. C. 1956 (1951) 9 Ann. 29 (31); 35 Ann. 102; 34 Ann. 1184.

*Henry Chiapella* and *L. De Poorter* for Defendants and Appellants:

1. The titles of the parties, and not the manner of putting in possession, or the acquiescence of one in the possession of the other for a time, will control, when the pretensions set up under this possession, are wholly inconsistent with the written titles. Millikin vs. Minnis, 12 La. 539.

2. In the questions of title, silence in no case shows consent, unless continued during the time for prescription, when applicable.  McIntosh vs. Smith, 2 Ann. 757.

3. *Bona fide* purchasers, without notice, who have paid the price, are not affected by secret equities existing between those under whom they hold and third persons, nor by their misrepresentations.  Pike vs. Mouget, 4 Ann. 83, 227.

4. Courts are bound to give legal effect to contracts according to the true intent of the parties. That intent is to be determined by the words of the contract, when these are clear and explicit, and lead to no absurd consequence.  C. C. 1945, §§ 2 and 3 ; C. C. 1958.

5. "Actual possession of a part of the land, with title to the whole, is possession of the whole."  Donegan vs. Martineau, 9 M. 43 ; Provost vs. Johnson, 9 M. 174; Gillard vs. Glenn, 1 R. 159.

6. A stale demand long withheld from prosecution until he, against whom it is preferred, has died, is regarded with disfavor; when no hindrance was in the way, it must be established with more than reasonable certainty.  The evidence must be peculiarly strong and conclusive to remove the unfavorable presumption created by the delay.  39 Ann. 684 ; 35 Ann. 1006.

The opinion of the Court was delivered by

FENNER, J.  On June 8, 1868, Robert J. Ker mortgaged to A. Chiapella four certain lots of ground to secure the sum of twelve thousand dollars represented by four promissory notes, payable one year after date.

In 1878, Mrs. Emelie Evershed, as holder of two of said notes, and F. B. Henriquez, as holder of one, brought separate suits, *via ordinaria*, against Robert J. Ker, who was duly cited, but suffered judgment by default to go against him.

The petitions filed in said suits set forth the debts claimed and the mortgage by which they were secured, the act of mortgage being annexed to and made part of the petition, and prayed for a judgment for the amount due with recognition of their mortgage on the property described in the act.

Judgments were rendered in both cases decreeing that the plaintiff "do have and recover of said Robert J. Ker, the sum of ($6500 in one case and $600 in the other), with interest, costs and attorneys' fees, and recognizing plaintiff's special mortgage and hypothecation on the property described in plaintiff's petition, without prejudice to the right and concurrent mortgage of the holder of the outstanding notes described and mentioned in plaintiff's petition."

Upon both of these judgments, after they had become final, and after due notice to the defendant, writs of *fieri facias* were issued in ordinary form, commanding the sheriff "that by seizure and sale of the property, real and personal, rights and credits of defendant, Robert J. Ker, you cause to be made the sum of, etc."

Under these writs the sheriff seized the property described in the act of mortgage, and, after due notice and advertisements and the observ-

ance of all due regularity of proceeding, the same was sold at public outcry and was adjudicated to Mrs. Evershed, as the last and highest bidder, for the price of $5400 cash, which sum, after deducting costs' taxes and attorneys' fees, was rateably distributed between the two plaintiffs.

In 1887, Wm. R. Ker, administrator of Robt. J. Ker, joined by certain mortgage creditors of Robert J. Ker, filed this suit, in which they allege that, being the owner of the property described in the mortgage to Chiapella, with other contiguous lots, he had, prior to said mortgage, changed the lines and dimensions of said lots, which are designated as A, B and C, and had made improvements upon them, making his home of lot A and part of lot B, and dividing the balance of lot B and lot C into several properties fronting on Claiborne street; that although it appears by the act of June 8, 1868, that he granted a mortgage in favor of Chiapella on the whole of lots A and C; yet, in reality, it was his intention to grant, and the intention of Chiapella to accept, a mortgage only on the lot A and part of lot B such as it stood, inclosed within dividing fences, forming a distinct and separate property from the rest; but that through a clerical error and inadvertence, contrary to the intention of the contracting parties, the notary, in drawing up said act of mortgage, erroneously extended it over the whole of lots A and C.

We need not state the allegations as to the rights of the co-plaintiffs, because they have none except such as are derived from Ker subsequently to the Chiapella mortgage, and must stand or fall with him.

They proceed to aver the facts relative to the judicial sale above set forth, but allege that the purchaser, Mrs. Evershed, under her title took possession only of the lot A and part of lot B, and never set up pretensions to any more; and that said Ker always retained possession of the lot C and the rest of lot B.

They allege that these errors were only recently discovered; that the defendants refuse to acknowledge or correct them ; and they pray for a judgment amending and correcting the description in the act of mortgage and in the sheriff's deed of sale, so as to conform to the intentions of the parties, and recognizing defendants as owners only of lot A and part of lot B, and the succession of Ker as owner of lot C and the rest of lot B.

When parties reduce their contracts to writing, and when the terms of the writing exhibit no uncertainty or ambiguity as to the nature, the object and the extent of the engagement, it is presumed that the writing expresses the true, full and complete undertaking of the parties.

When the instrument is free from any patent or latent ambiguity, parol evidence cannot be received to vary or contradict it.

. Courts of equity, however, have established a special branch of jurisdiction under which, when it is made clearly to appear that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and intended to embody therein, such mistake may be corrected, and the writing may be reformed to express the real intention of the parties.

But in this last case both reason and authority require that, before such relief can be afforded, there must be very clear proof of the different antecedent agreement and of the error in committing it to writing.

Now, in the instant case there is not the slightest ambiguity in the description of the property mortgaged. The description is not only accurately given by metes and bounds, but it refers to the acts under which Ker himself acquired the properties and under which they were conveyed to him by the same identical description.

This reference indicated conclusively to Ker that he was mortgaging his property according to the lines and divisions which it had when he acquired his titles, and not according to the new lines and subdivisions which he himself had subsequently established.

If he read the act there was no excuse for error, and if he did not read it such gross negligence would leave him with still less excuse. Allen vs. Whetstone, 25 Ann. 850; Watson vs. Bank, 22 Ann. 14; Keough vs. Foreman, 33 Ann. 1439.

It may well be assumed that he directed the mortgage by this description, because it made it easier for him to exhibit and trace his title, and obviated the necessity of identifying his new subdivisions with the titles by which he acquired; especially as he was only granting a mortgage which he, no doubt, expected to pay and cancel.

These considerations greatly weaken the presumptions which plaintiffs rest upon the improbability of Ker's intending to mortgage his property in lots, breaking up and destroying his own subdivisions.

But what proof is there that the written agreement does not express the true intentions of the parties, or that they ever entered into any different agreement whatever?

Everybody connected with the transaction had passed away before this suit was brought. Ker was dead, Chiapella was dead, the notary was dead; Mrs. Evershed was dead.

No witness appears who had the slightest cognizance of the transactions between the parties. The clear and unambiguous written instrument stands as the sole repository of the agreement and intentions of the

parties, with not a word of evidence to show that they ever made or intended to make any other.

Mrs. Evershed was not even a party to the act. While it does appear that Chiapella acted as her general agent, it is not proved that he acted as her agent in accepting the mortgage.

Though she acquired the notes through him and he held them for her, it does not appear when or how she acquired them.

Plaintiffs' whole case rests upon the presumptions above referred, resting upon the improbability of Ker's mortgaging his property in such shape, the weakness of which has already been suggested; and upon the additional fact that after her purchase at the judicial sale she took possession only of lot A and part of lot B, and never disturbed Ker's possession of the rest of the property. We know not how this error on her part may have been induced. Suffice it to say that Ker's possession and her acquiescence therein not having lasted long enough to form the basis of prescription, and being wholly inconsistent with the written title; it cannot have effect to overthrow the latter. Milliken vs. Minnis, 12 La. 546; Babineau vs. Cormier, 1 Mart. U. S. 456; Broussard vs. Duhamel, 3 Id. 11.

Cases may be found and are quoted by plaintiffs' counsel, in which circumstances such as those here relied on, have been given weight in interpreting ambiguous contracts and in determining the true meaning of ambiguous descriptions of property. Others exist in which even contracts unambiguous on their face have been corrected on clear proof that the parties had actually entered into a different contract which they had intended to embody in the writing drawn, but which, through error or fraud, the writing did not correctly set forth.

But no case can be produced in which an unambiguous written contract has been set aside or substantially reformed on circumstantial evidence so slight as that here presented, urged only after the lapse of nineteen years, and after the death of every party to the transaction.

Ambiguous contracts may be explained and controlled by unambiguous circumstances; but unambiguous contracts cannot be destroyed by ambiguous circumstances.

It might, moreover, well be doubted whether the plea of error, however clearly proved, could have been listened to after the judicial proceedings, in which the existence and verity of the mortgage, as executed, were distinctly put at issue, and which resulted in a formal contradictory judgment recognizing the same.

But, even passing over this obstacle, another presents itself in the form of those judicial proceedings. The plaintiffs therein, as we have seen,

Ker et al. vs. Evershed et al.

proceeded *viâ ordinariâ* and obtained a personal money judgment against Ker, which they executed by writs of *fi. fa.*, under which they seized and sold this property.  Suppose the mortgage were reformed or even annulled, or suppose they had never had any mortgage at all, they had an unquestionably valid judgment for money which they had the right to execute upon this or on any other property of Ker.   Defendants' title rests, not upon the mortgage, but upon the judicial sale, and we fail to discover any ground on which that sale can be attacked.

It is vain to say that Mrs. Evershed supposed she was buying a different property from that which was sold.   Titles under judicial sales are not to be regulated by the mistakes or errors of purchasers unless such errors were induced by some defect in the proceedings themselves, or by some fraud or misrepresentation.   The purchaser takes what is sold and what he buys, no more and no less.   Suppose the error had been on the other side, and the sheriff had seized and sold a less estate, could Mrs. Evershed, on alleging that she supposed it was a larger one, claim title to more than was sold ?

Finally, the judicial sale was made, not only under the judgment of Mrs. Evershed, but also under that of Henriquez, and he is not even made a party to the suit.

His mortgage rights, his judgment and the judicial sale thereunder must stand unaffected by this proceeding, and they alone are sufficient to sustain the title of defendants.

If anything could add force to the foregoing, it would be the fact that the whole property which was mortgaged as security for $12,000, brought at the judicial sale only $5400, a sum considerably less than the amount then remaining due under the mortgage, so that Mrs. Evershed, after her purchase, still stood a considerable loser by the transaction.  Whether that loss has been otherwise made good the record fails to advise us.   If not, we are now asked to increase it by taking from her part of the property brought in, which was already insufficient to satisfy her claim.

It is, therefore, adjudged and decreed that the judgment appealed from be annulled and reversed, and that there now be judgment in favor of defendants, and rejecting the demand of plaintiffs at their cost in both courts.

---

## DISSENTING OPINION.

WATKINS, J.   Robert J. Ker, deceased, acquired the ownership of several lots of ground in the city of New Orleans, which are situated in the square bounded by Esplanade, Claiborne, Bayou Road and Robertson streets, a portion of which forms the subject of this controversy.

Of these, three lots have their front on Esplanade street, with side line on one side, on Claiborne street, constituting this property the corner of Esplanade and Claiborne streets.

Four others have their front on Claiborne street, with one side line passing immediately in the rear of those last described.

The remainder consists of a narrow strip of ground of very nearly the shape of a parallelogram, which is situated in the rear of both of the two pieces of ground above described.

For convenience of reference, those three pieces of property may be designated by the letters A, B and C—A representing the property situated at the corner of Esplanade and Claiborne, B the property which fronts on Claiborne street, and C the property which is situated in the rear. See plan annexed.

All of these properties were purchased by Ker in the years 1843, 1844 and 1845.

On the 8th of June, 1863, he consented a mortgage for $12,000, represented by a series of promissory notes, payable to his own order and indorsed, though Chiapella is mentioned in the act as the mortgagee, upon the property mentioned in letters A and C; and on the 20th of June, 1872, he executed another mortgage, likewise represented by several notes, Charles Lafitte being named as the mortgagee upon the property mentioned in letter B.

In 1878 Mrs. Emelie Evershed, the mother of the defendants, purchased at execution sale, under a judgment which she had obtained against Ker, on several of the notes which were secured by the Chiapella mortgage, and she received a sheriff's title thereto.

No proceedings have been taken to purchase the Lafitte mortgage.

In the course of the administration of the succession of R. J. Ker, in 1886, the property mentioned in letters B and C were adjudicated a probate sale, and, upon inspection of the titles, it was ascertained to be a fact that the property mentioned in letter C was included in and covered by the Chiapella mortgage and the Evershed title; and the purchaser declined to accept the title tendered him by the Ker succession. An investigation led the administrator to believe that the Chiapella mortgage and the Evershed title had been erroneously extended to the property mentioned in C, contrary to the intentions of the contracting parties; and, therefore, this suit was brought to have this error judicially declared, and the titles to be so corrected as to conform to the true intentions of Ker and Mrs. Evershed.

The principal averment of the administrator's petition is "that, although such appears to be a fact, yet, in reality, it was the intention of

Ker to grant and of A. Chiapella to accept by the said act * * a mortgage only upon the corner of Esplanade and Claiborne streets, as it stood, and enclosed within well-established dividing fences, forming a distinct and separate property from the rest * * * but through a clerical error and inadvertence, and contrary to the intentions of the contracting parties, the notary, in drawing up the said act of mortgage, erroneously extended it over the whole " of the property mentioned in A and C, when it should have been restricted and confined to that mentioned in letter A.

He likewise represents that whatever may appear upon the face of the Lafitte mortgage act, "it was, in reality, the intention of said Ker to grant the letters and of Lafitte to accept a mortgage upon the whole " of the property mentioned in the letters B and C ; and that it should *not* have been restricted and confined to that mentioned in letter B.

He further represents that when, on the 7th of September, 1878, Mrs. Evershed became the adjudicatee at sheriff's sale of the property as erroneously described and as consisting of the whole of A and C, she really and actually took possession of "that property which, in the intendment of the parties, had been really mortgaged and sold, *i. e.*, the property at the corner of Esplanade and Claiborne streets, comprised in letter A, and never set up any pretension to any more; and that Ker remained in the undisputed possession as owner of all the other properties mentioned and comprised in the letters B and C, and of which the administrator is now in possession.

Substantially, the defendant's answer is a general denial, coupled with an averment of the truth and correctness of the recitals contained in the title of the sheriff to their mother, and in the Chiapella mortgage. They further aver that the descriptions which are contained in said acts are identical with those contained in the conveyances of Ker's vendors, and of their authors. They insist that plaintiff's demands are stale, because the acts in which error is assigned are twenty years old.

On these issues the facts developed on the trial are as follows, viz:

In the interim between the date of Ker's several purchases and 1850, he divided the several properties above enumerated into five distinct and separate lots, placed commodious and valuable residences upon each, and separated one from another by substantial fences.

On that part of the property situated at the corner of Claiborne and Esplanade streets, and within the limits mentioned in letter A, he established large and commodious improvements in which he resided until the date of the sheriff's sale to Mrs. Evershed, on the 7th of September, 1878. The remainder of the property mentioned in letters B and C were

divided into *four* distinct premises, fronting on Claiborne street. In this manner the property in letter C was subdivided at right angles with that on letter A. Upon each one of these four premises tenements were erected, suited to the wants of occupants, and same have been occupied continuously since as separate residences.

When Mrs. Evershed purchased, such was the situation of these several properties; and, under her sheriff's title she went into possession *only* of the Ker homestead, as at present enclosed, and as above described, and *no more*. Ker became her tenant, and continued to occupy the property, paying her rent. After her death he paid rent to her executor, and afterward to the defendants, as her simple heirs. Subsequently he removed to one of the four premises fronting on Claiborne street, and mentioned in letter B, where he continued to reside until his death; and his family have continued to reside there since.

Neither Mrs. Evershed nor the defendants have at any time had possession, under the sheriff's title, of any portion of the property outside of the Ker residence and inclosure; nor did any one of them, at any time prior to the institution of this suit, set up any claim or pretension to more.

They never made any demand or claim to any portion of the rents of the four properties on Claiborne street, and paid no portion of the taxes thereon.

There is no positive proof as to what were the real and actual intentions of the parties antecedent to, or at the time of the confection of the Chiapella mortgage, or of the sheriff's sale.

All of the contracting parties and the officers who executed them are long since dead, and nearly twenty years have elapsed since the former was passed. The determination of this case depends solely upon this evidence. There was no objection urged by the defendants to the admissibility of *parol* evidence. The right of the plaintiff to introduce it was conceded.

The opinion of the majority    the court holds adversely to the claim of the plaintiff, and, as I understand it, maintains two propositions, the result of which is an adverse judgment.

They are : 1st. That the recitals of the acts of mortgage and sale are perfectly formal and unambiguous in terms, and no contemporaneous error, or mistake is shown to have existed at the date of their execution; and 2d. That one was executed by a notary who seems to have pursued the recitals contained in former titles, and the other by a sheriff, in the execution of a judgment which is not assailed as erroneous.

To put it tersely, the opinion holds that the evidence of the alleged

error is insufficient, and cannot prevail against the formal acts of the public officers named.

I respectfully submit that both propositions are untenable.

1.   While it is perfectly true that there is no ambiguity in either act, it seems clear to my mind that, from the manner in which these acts have been treated for so many years by all the parties to them, the fixed and definite boundaries of the respective possessions thereunder, should control and govern their recitals.

The Code provides that in the interpretation of an agreement " when the *intent* of the parties is doubtful, the construction put upon it by the manner in which it has been executed by both, or by one, with the express, or implied, assent of the other, furnishes a rule for its interpretation." R. C. 1956.

Now, it is contended, this provision does not apply to plain and unambiguous instruments, but this is clearly incorrect, because we find, in a preceding article in the same section, that " all the articles in this section contain rules established by law for discovering the *intent*, when *either* the words are ambiguous *or* circumstances under it doubtful." R. C. C. 1945.

The phrase " circumstances under it doubtful " does not occur in the corresponding article of the French Code, and yet the Court of Cassation has frequently applied the principle contended for here, to parallel cases, for the purpose of ascertaining the intent of the parties. Toullier, t. 111, 2 p. 212, No. 320, and note 1; Laurent, Droit Civil, vol. 16, No. 504, p. 583.

In *Marcotte* vs. *Coco*, 12 R. 167, it was applied to a state of facts quite similar to the one presented here.   In that case the Court said :

" The testimony of McConley was objected to on the ground that parol testimony cannot be received for the purpose of *controling the express condition of the deed*   *   *   But the testimony was admitted, and we think properly.

" Courts of justice are bound, in the investigation of contracts, to seek the *common intent of the parties rather than to adhere to the literal sense of the terms.*

" When the intent of the parties is doubtful, says the Code, ' the construction put upon it by the manner in which it has been executed by both, or by one, with the express or implied assent of the other, furnishes a rule for its interpretation.'   Art. 1951.   Parol evidence is clearly admissible to prove *in what manner* a contract has been executed by the parties, and *how far, in a contract for the sale of land, the possession has been conformable to the deed.*

" In the case now before us the tradition was *made* by a survey and by planting posts on the line. * * All parties have acquiesced in this state of things. *The tradition was effected by acceptance of the thing sold, as understood by the parties at the time, and, in our opinion, this practical interpretation by the parties* themselves ought not to be disturbed." (Italics are mine.)

In *Palanquo* vs. *Guesnon*; 15 La. 311 — a leading case, and one that is cited in many *recent* opinions — the Court said :

" The plaintiff now seeks to recover a lot of ground, *such as is called for by his deed of sale.* Defendant resists this claim *on the* ground that there was evidently a *mistake and misdescription in the instrument;* that the piece of ground *intended to be sold* by her, and purchased by the plaintiff, *was that of which he had taken possession in* 1830*; which he had improved, and in which he had been living since.* * * Upon the whole, the evidence establishes beyond a doubt, the error alleged by the defendant, and the shameful bad faith of the plaintiff in attempting to take advantage of it." (Italics are mine.)

The facts detailed are almost identical with those of the instant case, the terms being reversed.

I respectfully submit that, notwithstanding the terms of the acts in question are perfectly formal and free from ambiguity, the proof administered discloses the manner in which they were executed by all the parties to them, and that their possession was not conformable thereto ; that this proof controls " the express conditions of the deeds," and that " this practical interpretation (of these acts), by the parties themselves, ought not to be disturbed."

2. The suit of Mrs. Evershed was not simply for the recovery of the debt she held against Ker, but for the enforcement of the Chiapella mortgage also, because she specially petitioned for the recognition, and, under the judgment and *fi. fa.*, the identical property therein described was taken, *and no more.* If such was not the purpose, in the execution of her judgment, why did she limit the seizure to that part of the property described in letters A and C, and did not seize and sell that described in letter B ? Can it be supposed that she desired to purchase these fragmentary portions of property, or that any one else would ? Certainly not.

This course of dealing with Ker's property is conclusively against the theory that it was an ordinary execution sale. It was a proceeding *via ordinaria* for the foreclosure of the Chiapella mortgage, and nothing else.

3. There is no force, in my opinion, in the second proposition maintained in the opinion of the court.

The Code provides that "judicial sales are subject to the rules laid down for public sales in general." R. C. C. 2617.

"The adjudication is the completion of the sale; the purchaser be- comes the owner of the article adjudged, and the contract is from that time subjected to the same rules which govern ordinary contracts of sale." R. C. C. 2608.

These rules are that "in all cases where no specific provision is made under the present title, the contract of sale is subject to the general rules established under the title of *Conventional Obligations.*" R. C. C. 2438.

Thus we have it proved that judicial sales are subjected to the rules governing obligations in general. This court has applied these rules to judicial sales in many cases, and particularly in the following, viz: Hall vs. Nevill, 3 Ann. 327; Davenport's Heirs, 3 N. S. 679; Stewart vs. Boyd, 15 Ann. 171; Jones vs. Crocker, 1 Ann. 440; Heirs of Cartle vs. Floyd, 38 Ann. 583.

In quite as many cases error has been assigned in judicial sales, and maintained by the court, and notably in the following, viz: Buard's Heirs vs. Buard, 2 La. 3; Chaion vs. Pepin, 13 La. 534; Williams vs. Hunter, 13 Ann. 476; Robert vs. Boulet, 9 Ann. 29.

If then judicial sales are subject to the rules governing conventional sales and conventional obligations—and they are—what becomes of the argument that, forsooth, Mrs. Evershed holds under a perfectly formal adjudication by the sheriff, and that the Chiapella mortgage was passed by a notary who employed the *identical descriptions contained in the titles of his authors,* hence they are not open to a charge of error such as assigned in this case ?

To state the question is to answer it.

It is argued that because Henriquez also obtained a judgment and *seized* this *property,* and is not made a party, therefore, this case must fail.

Henriquez did not buy any part of the property.

His judgment was satisfied by Mrs. Evershed, who was the adjudicatee. Besides, this question is not raised by the defendant's answer.

It is said plaintiffs did not ask the annulment of Mrs. Evershed's judgment under which the sale took place, and that is a bar to plaintiffs' recovery. It was extinguished in greater part by her purchase of the property, and has ceased to exist *pro tanto.*

But it simply pursued the tenor of the petition and mortgage, and perpetuated rather than cured the error. Besides, the defendants tendered no plea of *res adjudicata* or estoppel, and this court cannot supply them.

*Bayou Road*

*Robertson*

*Claiborne*

*Barracks St.*

*old spike*

*fence*

*fence*

*fence*

*fence*

*Esplanade*

Exhibit and sketch annexed to and forming a part of this opinion.

L. B. WATKINS, Judge.

It is my deliberate judgment that the case is with the plaintiffs, and that the judgment ought to be affirmed.

The Chief Justice concurs in this dissent.