(138 So. 513)

## LANDECHE BROS. CO., Limited, v. NEW ORLEANS COFFEE CO., Limited.

### No. 28857.

Nov. 30, 1931.

Henry & Cooper, A. M. Suthon, and Julian G. Pendergrast, all of New Orleans, for appellant.

Denegre, Leovy & Chaffe, of New Orleans, for appellee.

ODOM, J.

Plaintiff and defendant entered into a written contract which reads, in so far as it need be quoted, as follows:

"Sugar—Contract.

"New Orleans, La., June 4, 1920.

"The Landeche Bros. Co., Ltd., Killona, La., have sold and the New Orleans Coffee Co., Ltd., have bought.

"Quantity: Approximately Five Thousand (5000) barrels of Mary open pan syrup from the growing crop.

"Quality: Syrups to be good grade and to beaume 38½ at 65/o Fahrenheit, and to be made from sound cane.

"Price per Gallon: If sugar sells at 15¢ to 20¢ per lb., 6½ times the price of Prime Y. C. Sugar.

"If sugar sells at 20¢ to 25¢ per lb., 6¼ times the price of Prime Y. C. Sugar.

"If sugar sells at 25¢ to 30¢ per lb., 6 times the price of Prime Y. C. Sugar.

"Deliveries: To begin with grinding and to continue until quantity has been completed."

When the date of delivery arrived, which was the beginning of the grinding season in 1920, defendant refused to accept any syrup from plaintiff. By the present suit, plaintiff seeks to recover of defendant $11,628.93, alleged to be the amount of damage sustained on account of the breach of the contract. Defendant excepted to the petition on the ground that it set out no cause and no right of action. The exception was sustained, and plaintiff appealed.

The exception is well founded and was properly sustained. The contract is in

writing and speaks for itself. Plaintiff contends that the document evidences an unconditional obligation to sell and to buy. The defendant on the contrary contends that, under the express provisions of the document, there was to be no sale unless the market price of prime Y. C. sugar for the grinding season of 1920 ranged from 15 cents to 30 cents per pound; that it was not contemplated that either party should be bound if the price dropped below 15 cents or went above 30 cents, and that, inasmuch as plaintiff alleged that the highest market price of sugar for the season was 5.91 cents, it affirmatively appears that neither party is bound.

It will be noted that the price of the syrup was made to depend upon the market price of Prime Y. C. sugar. The contract stipulates that the price of the syrup per gallon was to be 6½ times the price of Prime Y. C. sugar "if sugar sells at 15¢ to 20¢ per lb."; 6¼ times the price of sugar "if sugar sells at 20¢ to 25¢ per lb."; and 6 times the price of sugar if it sells for 25 cents to 30 cents. So that if sugar had sold, for instance, at 18 cents per lb., the price per gallon for the syrup would have been 6½ times 18 cents, or $1.17, and, if it had sold for 26 cents per lb., the price of the syrup would have been 6 times 26 cents, or $1.56. The lowest price fixed for syrup was 6½ times 15 cents, or $.97½, and the highest was 6 times 30 cents, or $1.80.

It seems that on June 4, 1920, the date on which this contract was entered into, the market price of Prime Y. C. sugar was 22 cents per lb. It may be that the parties did not anticipate that during the grinding season of 1920, in which the syrup was to be delivered, the price of sugar would drop below 15 cents or go above 30 cents, and for that reason thought it unnecessary to provide for the fixing of a price for the syrup except

as they did. Or it may be that both parties or one of them did not care to enter into such a contract unless sugar sold at prices ranging from 15 cents to 30 cents. But whatever they had in mind, the contract evidences the fact that the plaintiff did not bargain to sell nor the defendant to buy the syrup except on condition that the market price of sugar ranged from 15 cents to 30 cents per lb.

If they had intended, as plaintiff contends they did, to enter into an unconditional obligation to sell and to buy the quantity of syrup mentioned, regardless of the price of sugar which regulated the price of the syrup, it is reasonable to assume that they would have provided some method of fixing the price in case sugar dropped below 15 cents or went above 30 cents.

The fact that they failed to do so must be construed to mean that they did not intend to do so, and that they did not intend to bind themselves except under the conditions stipulated.

The contract literally construed means not merely that plaintiff was to sell and defendant to buy a certain quantity of syrup. It means more than that. It means that the syrup should be sold in case the price of sugar, which regulated the price of syrup, ranged between 15 cents and 30 cents, as stipulated.

The case of Held v. Goldsmith, 153 La. 598, 96 So. 272, 275, involved the interpretation of a contract under which one merchant agreed to ship rice to another on the steamer "Sylvanian." Justice St. Paul, the organ of the court, said in the opinion on rehearing:

"In the case before us one party agreed to sell, and other to buy, rice to be shipped by the steamer Sylvanian. The stipulation to ship by the Sylvanian was put into the contract for reasons best known to the parties

who put it in. As merchants, they were not likely to have put it in unless they attached some value and importance to it; and they owed no explanation why they put it in, but are entitled to stand by the contract as deliberately expressed by them in writing.

"We are therefore of opinion that plaintiff bound itself to ship by the Sylvanian, and by no other ship, and that, when it became impossible for it to ship by the Sylvanian on account of the outbreak of the war between England and Germany, plaintiff was discharged from fulfilling same."

When parties reduce their agreements to writing, and when such writing exihibits no uncertainty or ambiguity as to the nature, extent, or object of the agreement, it is presumed that the document expresses their true intent; and, in the absence of an allegation of fraud, error, or mistake, their intents and purposes cannot be sought outside the four corners of the instrument. Ker, Administrator, et al. v. Evershed et al., 41 La. Ann. 15, 6 So. 566; Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214; Rodgers v. Bolinger Co., 149 La. 545, 89 So. 688; American Cigar Co. v. Fabacher, 156 La. 182, 187, 100 So. 299; Savant v. Goetz & Lawrence, 160 La. 916, 107 So. 621.

Under our interpretation of the contract, the parties did not intend to bind themselves to sell and to buy except on condition that sugar sold at prices named in the contract, and, inasmuch as the market price at no time during that season reached the lowest price named, they were not bound.

Plaintiff's counsel in oral argument and in brief earnestly contend that the contract itself shows that this was an unconditional

sale, and they lay stress upon the opening paragraph, which reads:

"The Landeche Bros. Co., Ltd., Killona, La., have sold and the New Orleans Coffee Co., Inc., have bought."

█ But we must not look to this clause alone for the intent of the parties. Contracts must be construed as a whole.

"All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act." Civ. Code, art. 1955.

In order to ascertain the intent and meaning of a contract, all its clauses must be construed together. Escoubas et al. v. Louisiana Petroleum Co., 22 La. Ann. 280; Succession of Allen, 48 La. Ann. 1036, 20 So. 193, 55 Am. St. Rep. 295.

The above-quoted clause must be construed along with the one fixing the price. But if it be conceded that counsel's contention is correct, their client is in no better plight, for the reason that there was no agreement as to the price of the commodity if sugar sold for less than 15 cents, which it did. The three essential elements of a sale are the thing, the price, and the consent of the parties. Civ. Code, art. 2439. In the absence of any one of these essentials, there is no sale.

The learned district judge in closing his written opinion well said:

"Therefore, as there was never any time that prime yellow clarified sugar sold for fifteen cents a pound and over, there was never any fixing of a price for syrup and no obligation on the part of the seller to deliver and the buyer to receive and pay for it."

The judgment appealed from is affirmed.