181 So. 535

**INTERSTATE TRUST & BANKING CO. v. BRECKINRIDGE et al.**

No. 34561.

May 2, 1938.

Marcus and Corkern and Flanders and Fred. A. Kullman, all of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling and Jack E. Hurley, all of New Orleans, for appellees.

ODOM, Justice.

The Mortgage & Securities Company, hereinafter referred to as the Company, was a Louisiana corporation domiciled in New Orleans and, according to the agreed statement of facts, "for many years, did a large and extensive business in the underwriting and sale of various types of securities". The Company was placed in receivership on August 8, 1929.

On August 1, 1924, the Company entered into an agreement, evidenced by writing,

with the Canal Commercial Trust and Savings Bank of New Orleans (the name of the bank being later changed to Canal Bank and Trust Company), referred to as a "Depositary" or "Trustee", by which agreement the Company "proposes to set over, assign and transfer to the Depositary from time to time certain notes (and the debts evidenced thereby), secured by first mortgages, hereinafter called the 'Securities'". (Quoted from preamble of written instrument.) The instrument contains sixteen articles. Article I provides that:

"The Company shall transfer and assign said Securities to the Depositary, and the Depositary shall accept said Securities and the Title thereto, in trust for the benefit and account of the Company and of each and every person or corporation that may be or become the owner of an undivided part or share of said Securities and to whom shall be issued or transferred any First Mortgage Participating Certificate or Certificates, as herein described, evidencing the ownership by the holder thereof of an undivided part or share of said Securities."

Article II of the instrument reads as follows:

"The Company has reserved, and shall have, the right to sell undivided parts or shares of said Securities as the same are assigned and delivered to the Depositary, and to issue and deliver to the purchasers of said parts or shares, respectively, First Mortgage Participating Certificates each representing a part or share of the Securities then or thereafter deposited under the terms of this Agreement equal to the proportion which the purchase price named in the Certificate bears to the total aggregate face value of the Securities then or thereafter deposited with the Depositary; provided always that there shall not be at any time issued and outstanding Certificates exceeding in amount the aggregate face value of the Securities so assigned and transferred to the Depositary."

Article III of the instrument provides that:

"The Company has and shall have the right to issue, in accordance with the terms hereof, First Mortgage Participating Certificates in form substantially as follows."

Then follows the form of certificate which the Company proposed to issue. The purpose or reason for the transfer of the securities by the Company to the Depositary is explained in the preamble to the instrument, as follows:

"Whereas, said Securities are to be so transferred and deposited, and these presents are prepared for the purpose of facilitating sales by the Company of parts or shares of said Securities to be evidenced by First Mortgage Participating Certificates, hereinafter sometimes referred to as 'Certificates', each Certificate representing such part or share as may be in said Certificate described, each evidencing the ownership by the purchaser of undivided parts or shares respectively in said Securities."

On March 2, 1934, F. Prevost Breckinridge and Percy H. Sitges became the successor Depositaries or Trustees to the Canal Bank and Trust Company. And the present suit was brought against them in their representative capacities.

Jasper S. Brock, State Bank Commissioner in charge of the Interstate Trust & Banking Company, now in liquidation, brought the present suit against Breckinridge and Sitges, alleging that the bank was the holder and owner of certificates Nos. 173, 178, 186 and 187, issued by the Mortgage & Securities Company, said certificates aggregating the total face sum of $24,000.00; that said certificates were issued in accordance with a certain indenture dated August 1, 1924 (which is the written instrument hereinabove referred to); that the Mortgage & Securities Company is hopelessly insolvent and the only possible source of liquidation of the certificates held by petitioner is from collections on securities delivered to the Depositary or Trustee under the agreement dated August 1, 1924.

It is further alleged that the Mortgage & Securities Company became in default according to the provisions of the said indenture on July 1, 1929, and that accordingly it became the right and duty of the Depositary or Trustee to collect the proceeds of the securities deposited with it under the terms of the indenture for the pro rata benefit of all the holders of outstanding participating certificates issued by the Company, including those held by the plaintiff, and that at the time of default there were outstanding certificates, including those held by petitioner, amounting to $79,687.00. It is further alleged on information and belief that the said Breckinridge and Sitges, as Depositaries or Trustees, have made substantial collections on the deposited securities and have made therefrom various and sundry pro rata distributions to all of the holders of said certificates except plaintiff; that plaintiff, as the holder of the said four certificates, is legally entitled to its pro rata share of all collections made, and that the withholding from petitioner of its pro rata share therein was unjustified, illegal and without warrant in law.

Plaintiff prayed for judgment against Breckinridge and Sitges as Depositaries or Trustees, ordering them to pay the plaintiff in preference and priority over all other holders of such certificates "a sum equal to the proportion that $24,000.00 bears to $79,687.00 of all collections heretofore made on the securities deposited with the Trustees and/or Depositaries under the indenture of August 1st, 1924; that after the payment of this amount to petitioner, the $24,000.00 in Texas Participating Ctfs. held by petitioner, Interstate Trust and Banking Co., in Liquidation, be decreed to be of equal rank to all other outstanding Texas Participating Certificates and as such, entitled to share pro rata in all future collections made on securities deposited with the Trustees and/or Depositaries under the indenture of August 1st, 1924".

Breckinridge and Sitges, in their representative capacities, answered the suit and denied, for lack of sufficient information, practically all of the allegations of the petition. But they later supplemented their original answer by alleging that their predecessor, as Depositary or Trustee, had, under and in accordance with the trust agreement, dated August 1, 1924,

"distributed Fifty ($50.00) Dollars on each One Thousand ($1,000.00) Dollars par value of so called participating certificates

issued under said indenture, except on those numbered 173, 178, 186 and 187 mentioned in the petition herein filed, and that your respondents have distributed One Hundred and Ninety-Two and 30/100 ($192.30) on each One Thousand ($1,000.00) Dollars par value of said so-called participating certificates, except on the four above mentioned."

Paragraphs B and C of defendants' supplemental answer read as follows:

"That said total distribution of Two Hundred and Forty-Two and 30/100 ($242.30) Dollars per each One Thousand ($1,000.00) Dollars par value would amount to Five Thousand Eight Hundred and Fifteen and 20/100 ($5,815.20) Dollars on Twenty-Four Thousand ($24,000.00) Dollars face value; and that when said distributions were made sufficient funds were retained to make a like distribution on the four so-called participating certificates mentioned in plaintiff's petition.

"That Four Thousand Six Hundred and Fifteen and 20/100 ($4,615.20) Dollars was so retained by your respondents and is available in cash. That One Thousand Two Hundred ($1,200.00) Dollars was so retained by your respondent's predecessor and was deposited in Canal Bank & Trust Company, of which amount Four Hundred and Twenty ($420.00) Dollars became available in cash and was turned over to and is now in possession of your respondents (in addition to the Four Thousand Six Hundred and Fifteen and 20/100 ($4,615.20) Dollars hereinabove mentioned) and that the balance of said One Thousand Two Hundred ($1,200.00) Dollars, namely Seven Hun-

dred and Eighty ($780.00) Dollars, is frozen in the Canal Bank & Trust Company in Liquidation."

From these admissions it follows that, if plaintiff is entitled to recover, it should have judgment recognizing that its certificates are of equal rank with the others outstanding and judgment against Breckinridge and Sitges, as Trustees or Depositaries, for $5035.20, the amount of cash now in their hands and reserved by them for the purposes stated in Paragraph B of the supplemental answer, and ordering them to pay to plaintiff $780.00 now frozen in the Canal Bank and Trust Company when and if that amount is finally collected by them, or such part thereof as may be collected; and further ordering them to pay plaintiff its pro rata share of the proceeds of the securities remaining in their hands, if any.

There was judgment in the district court rejecting plaintiff's demands and dismissing its suit at its cost. Plaintiff appealed.

Plaintiff's contention is that the certificates issued by the Company were intended to be, and are, "Participating Certificates" as shown on their face and as shown by the terms of the trust agreement entered into by the Company and the Trustee on August 1, 1924.

Defendants' contention is that, while it is true the certificates on their face are denominated "Texas First Mortgage Participating Certificates" and are referred to as such in the trust agreement, yet, when the certificates and the trust agreement, with reference to and in conformity with which the certificates were issued, are construed

together and each as a whole, it manifestly appears that the certificates were intended to be, and are, moneyed obligations of the Company secured by pledge of the notes or bonds deposited with the Depositary.

It is conceded by counsel for defendants that, if the certificates are "Participating Certificates" as counsel for plaintiff contend, then plaintiff is entitled to judgment. Counsel for defendants say in their brief at page 9:

"It is, of course, of prime importance to determine at the outset whether the so-called mortgage participating certificates are in fact (as contended by our learned opponents) participating certificates representing an undivided ownership in the notes and bonds deposited with the Depositary (or as contended by us) merely moneyed obligations of Mortgage & Securities Company secured by pledge of the notes and bonds deposited with the Depositary." ··

The certificates referred to, with irrelevant portions omitted, are in the following form:

"No. ——— ;          Amount ———
Series ———          Maturity ———
Texas First Mortgage Participating
Certificates
Issued By
Mortgage & Securities Company
New Orleans, Louisiana

"This Certificate is one of a series of First Mortgage Participating Certificates representing notes and bonds secured by first mortgages on real estate situated within the boundaries of the State of Texas, hereinafter called 'Securities', and is issued under a Trust Agreement executed by Mortgage & Securities Company to Canal-Commercial Trust & Savings Bank dated August 1st, 1924.

"The Mortgage & Securities Company hereinafter called the 'Company,' certifies that it has sold, assigned and set over to purchaser, hereof, hereinafter called the 'Purchaser', an undivided part or share of said Securities equal to the proportion that the sum of ——— Dollars hereinafter and in said Agreement designated as the purchase price, bears to the aggregate face value of the notes and/or bonds now or hereinafter deposited under the terms of said Agreement with the Canal-Commercial Trust & Savings Bank of New Orleans, Louisiana, hereinafter called the 'Depositary', a Louisiana Corporation having its principal place of business in the City of New Orleans, and that the Company has received from the said Purchaser the amount of said purchase price. Such Securities are held by the Depositary in trust for the account of the holders of the First Mortgage Participating Certificates issued by the Company, and for the account of the Company under the provisions of said Agreement, as their interest respectively may appear; * * * the full and final payment of the notes and bonds deposited under the terms of said trust agreement with the Depositary is hereby unconditionally guaranteed by the Mortgage & Securities Company. This Certificate shall mature and be payable at the office of the Mortgage & Securities Company on the ——— day of ———, 19—. This Certificate is issued under and is subject to the

terms, conditions and provisions of said Agreement, and the holder hereof does by the Acceptance of this Certificate assent to the said Agreement and agrees to all of the terms, conditions and provisions thereof. A Copy of said Agreement is on file with the Depositary for inspection by the holder of any Certificate issued hereunder."

The rule for interpreting contracts is laid down in Article 1955 of the Civil Code, which reads as follows:

"All clauses of agreement are interpreted the one by the other, giving to each the sense that results from the entire act."

See Landeche Bros. Co., Ltd., v. New Orleans Coffee Co., Ltd., 173 La. 701, 138 So. 513.

The original certificates are before us. Printed at the top and across each in bold, large capital letters are the words: Texas First Mortgage Participating Certificates. By referring to the above copy, it will be noted that in the text of the certificates they are denominated "First Mortgage Participating Certificates". The certificates recite that they are issued and are "subject to the terms, conditions and provisions of said Agreement", this relating to the trust agreement. The trust agreement from its preamble to the end uses the term "First Mortgage Participating Certificates" eighteen times. In the preamble it is recited that the "First Mortgage Participating Certificates" are "hereinafter sometimes referred to as 'Certificates.'"

The word "Certificate", or its plural, is used frequently in the trust agreement, but from the context it clearly appears that the word has reference to the term "First Mortgage Participating Certificate". To illustrate, when the term "First Mortgage Participating Certificate" is used in an article of the trust agreement, later on in the same article the certificates are referred to merely as "the Certificates", "such Certificates", or "said Certificates".

Therefore, if a name means anything, these are "Participating Certificates". But the text of the document shows clearly that they were intended to be, and are, such.

According to the trust agreement, the Company proposed to "set over, assign and transfer" to the Depositary, from time to time, certain notes secured by first mortgage, and in Article I thereof it is stated that the "Depositary shall accept said Securities and the Title thereto, in trust for the benefit and account of the *Company and of each and every person or corporation that may be or become the owner of an undivided part or share of said Securities* and to whom shall be issued or transferred any *First Mortgage Participating Certificate or Certificates as herein described, evidencing the ownership by the holder thereof of an undivided part or share of said Securities*".

In the preamble it is stated that "these presents are prepared for the purpose of facilitating *sales by the Company of parts or shares of said Securities* to be evidenced by First Mortgage Participating Certificates, * * * each Certificate representing such part or share as may be in said Certificate described, *each evidencing the ownership by the purchaser of undivided*

*parts or shares respectively in said Securities".*

In Article II it is stipulated that the "Company has reserved, and shall have, the right *to sell undivided parts or shares of said Securities * * * and to issue and deliver to the purchasers of said parts or shares, respectively, First Mortgage Participating Certificates each representing *a part or share* of the Securities then or thereafter deposited under the terms of this Agreement equal to the proportion which the purchase price named in the Certificate bears to the total aggregate face value of the Securities then or thereafter deposited with the Depositary".

Referring to the certificates, they recite that the Company "certifies that it has sold, assigned and set over to Purchaser, here-of, hereinafter called the 'Purchaser', an undivided part or share of said Securities equal to the proportion that the sum of ——— dollars hereinafter and in said Agreement designated as the purchase price, bears to the aggregate face value of the notes and/or bonds now or hereinafter deposited under the terms of said Agreement with the * * * Depositary * * * and that the Company has received from the said Purchaser the amount of said purchase price".

From all this it is perfectly clear that what the Company intended to do, and what it in fact did, was to sell undivided parts or shares of the notes or bonds deposited by it from time to time with the Depositary, the sale being evidenced by the certificates. The trust agreement provides that the aggregate face sum of all outstanding certificates issued by the Company should not exceed the aggregate sum of the securities on deposit. And to serve as a check on the Company, and perhaps to inspire confidence and give the certificates commercial value, it was provided in the trust agreement that the Depositary should keep a book in which all securities held by it were to be registered, and showing the amount thereof as well as the amount of cash on hand received from collections; and that the Depositary should be notified by the Company immediately of the issuance of any certificate or certificates, and that no certificate should be valid unless and until approved and countersigned by the Depositary. The Company had a right to withdraw securities on deposit by substituting others of equal amount and value. So that there were on deposit at all times securities of an aggregate amount not less than the aggregate face sum of all outstanding certificates. The agreement further provided in Article VII that, if at any time the whole or any part of the principal of said securities was paid to the Depositary, the Company should have the right to "substitute Securities for the money so paid, the Securities so substituted being of the same kind as above described and equal in face value to at least the sum of money paid to the Depositary"; and further provided that, in event of such substitution, the money so paid to the Depositary "should belong absolutely to the Company and be forthwith paid to it by the Depositary".

It is perfectly clear that each certificate holder owned in indivision a proportionate part or share of the securities on deposit. A maturity date was inserted in each of the

certificates, and it was contemplated that the Company would take them up on or before the maturity date. Article X of the trust agreement says that the failure of the Company to pay to the holder of a certificate "the sum or amount to which said holder is entitled in accordance with the terms of the Certificate held by him, such failure continuing for a period of thirty days after the date on which such sum should be paid," should be considered and constitute a "default" on the part of the Company. And Article XI provides in sum that, in case of default by the Company, the Depositary shall hold the securities for the benefit of all those interested "as their respective interests may appear" and shall be "the agent of the holders of said Certificates and of the Company for the purpose of collecting the interest accruing on said Securities and the principal thereof * * * and * * * may with the consent of the owners of a majority in amount of First Mortgage Participating Certificates, sell the mortgage Securities pledged, without the consent of the Company, and *apply the proceeds to the payment of First Mortgage Participating Certificates, pro rata.*" (Italics ours.)

It is further provided that, as any money comes into the hands of the Depositary, after default by the Company, it shall pay the same to the holders of the certificates or the Company, "pro rata as their interests respectively may appear". In this way the holders of the certificates were permitted to participate, on a pro rata basis, in the proceeds of the securities left in the hands of the Depositary in the event of a default by the Company.

Referring now to the argument made by counsel for defendants that the certificates evidenced "merely moneyed obligations of Mortgage & Securities Company secured by pledge of the notes and bonds deposited with the Depositary", we find that the argument finds no support in the documents themselves. It is true, as they say, that there are an amount and a maturity date specified in the certificates and that in two places in Article XI of the trust agreement reference is made to "mortgage Securities pledged". But nowhere in the certificates is it stated, nor can such inference be drawn, that the Company obligated itself to pay them. They recite that "This Certificate shall mature and be payable at the office of the Mortgage & Securities Company" on a date inserted. But it is not stated that the Company shall pay them. In the trust agreement it is provided that the Company's failure to pay them when presented constituted a default on its part and as a result it forfeited its interest in the securities deposited.

Our conclusion is, and we hold, that these are participating certificates as contended by counsel for plaintiff.

For the reasons assigned, the judgment appealed from is reversed and set aside. And it is now ordered, adjudged and decreed that plaintiff have judgment recognizing its certificates as of equal rank with the others outstanding, and that there be judgment against F., Prevost Breckinridge and Percy H. Sitges, as Trustees or Depositaries, for $5,035.20, the amount of cash now in their hands and reserved by them for the purposes stated in their supplemental

answer, and judgment ordering them to pay to plaintiff $780.00 now frozen in the Canal Bank and Trust Company when and if that amount is finally collected by them, or such part thereof as may be collected, and ordering them to pay plaintiff in due course of administration its pro rata share of the proceeds of the securities remaining in their hands. All costs are to be paid by appellees.

O'NIELL, C. J., does not take part.