This is an action to reform credit deed by plaintiff to defendant as regards the price, the rate of interest and whether from date or maturity on the deferred portion of the price. The act of sale is in notarial form, having been passed before Mr. W.F. Pipes, Notary Public in the City of Monroe, Louisiana, on March 22, 1939. The facts of the case are unique.
Plaintiff is an illiterate colored man and was seventy-eight years old when the deed was passed. The record reflects that he has been frugal and industrious. Through these practices he has accumulated material substance of a value far in excess of the average of his race. He owned an improved lot in the City of Monroe, and decided to sell it. Having known defendant since birth and thinking he needed a home, he approached his wife about buying the property. Plaintiff had his daughter, Pauline, write defendant's wife on the subject and therein quoted the price at which she or the defendant could acquire the property. Two months elapsed but no agreement was reached, though the matter was discussed at intervals. Finally, on the night of March 21, 1939, plaintiff and defendant reached an agreement at the home of the former near Calhoun, Louisiana, fifteen miles west of Monroe. At that time plaintiff was sick and he instructed defendant to have Mr. Pipes prepare the papers and affix his signature to the deed, it being understood that defendant would impart to Mr. Pipes the correct terms of the sale. Mr. Pipes had acted as plaintiff's counsel and legal adviser for several years and because of this relation, plaintiff was certain his interest would be protected by him. Mr. Pipes had known defendant for several years and had implicit faith in his honesty and fairness.
On March 22nd defendant went to Mr. Pipes' office and told him he had purchased the property from plaintiff and that plaintiff desired that he prepare the deed, etc. His version of the terms of the sale was accepted by Mr. Pipes and the deed and notes accordingly drawn. The price recited in the deed is one thousand eight hundred ($1,800) dollars, of which one hundred ($100) dollars was paid in cash. For the balance of the price, eleven (11) notes of one hundred forty-four ($144) dollars each and one (1) for one hundred sixteen ($116) dollars, due over a period of twelve (12) years, secured by mortgage and vendor's lien, were given. These stipulate eight per cent (8%) interest from maturity. After the papers were prepared, Mr. Pipes called plaintiff on the telephone and asked him if he desired that he affix his signature to the deed and receiving an affirmative reply, this was done. The deed was delivered to defendant. The notes and the one hundred ($100) dollars were thereafter delivered to plaintiff or to some one representing him.
Plaintiff contends that the correct price of the sale was one thousand eight hundred fifty ($1,850) dollars and that the rate of interest agreed upon was six per cent (6%) from date of notes. He alleges that defendant misled and deceived Mr. Pipes and thereby practiced a fraud upon him, plaintiff. For these reasons, reformation of the deed and notes is sought. Defendant, of course, stands upon the deed and notes as written, alleging that their contents evidence the true agreement.
The lower court rejected plaintiff's demand and he prosecutes this appeal.
When the terms of the sale were agreed to at plaintiff's home, there were present besides him and defendant, Alvin Britton, grown son of plaintiff, and defendant's wife. Defendant and his wife are positive that plaintiff agreed to take one thousand eight hundred ($1,800) dollars for the property and that no interest would be charged on the deferred payments. Alvin is as equally certain that the agreed price was one thousand eight hundred fifty ($1,850) dollars and that the notes were to bear six per cent (6%) interest from their date. Due to senility, plaintiff's testimony is contradictory in some respects, uncertain and unintelligible to a considerable extent. Before he was placed on the witness stand, testimony was adduced to show *Page 52 
to the court that his mentality was unstable. As to the price, his testimony is equivocal, but concerning the interest it is definite. He is certain it was fixed at six per cent (6%) from date. He stated that the price was one thousand eight hundred ($1,800) dollars with one hundred ($100) dollars cash, but in the next breath stated the price was the amount he had invested in the property as reflected from his books, kept by his daughter, Pauline. She says this amount was one thousand eight hundred fifty ($1,850) dollars, and that this was the price amount she quoted in the letter she wrote defendant's wife at her father's request. Defendant and his wife testified that the price stated in the letter was one thousand eight hundred ($1,800) dollars, but the letter was not introduced in evidence. Had this been done its contents would have been decisive of the question of price. The failure to produce the letter is not satisfactorily explained; in fact, meager effort was made to account for its non-production.
It appears that after the sale was made, defendant arranged with Pauline Britton to collect the monthly rent of sixteen ($16) dollars from the tenant of the property. When the first note matured she had in her hands an amount in excess thereof. She made up a statement in which she credited defendant with the rent less ten per cent (10%) thereof for collecting it and charged him with the note plus six per cent (6%) interest. He testified that he protested against the interest charge but finally consented that it be deducted in order to avert a fight. He also testified that he objected to the amount of commission charged by Pauline to collect the rent. His wife was present at the time and corroborates what he says on the subject. We are convinced, after a close study of the testimony bearing upon this transaction, that defendant did not object to the interest charge but did object to the rate of commission.
Nothing further happened between the parties until the second note matured. Defendant offered to pay this one and also the twelfth of the series. Plaintiff exacted interest on each note at six per cent (6%) for two years. Defendant says he refused to pay any interest at all while plaintiff, his son and daughter testified that he objected only to paying "double" interest by which we understand he was willing to pay only one year's interest on each note. An impasse in their affairs resulted. Thereafter defendant interviewed Mr. Pipes and asked him if a note stipulated interest from maturity could interest be collected from date, and, of course, was given a negative answer. Within a few days subsequent to this interview, defendant returned to plaintiff's place and stated to plaintiff in the presence of his son and daughter that Mr. Pipes desired that he accept payment of the second and last notes maturing without interest. Defendant denies that he made any such statement. He says he told plaintiff that Mr. Pipes wanted to see him. Still relying upon defendant's honesty, plaintiff and his children reasoned among themselves that if Mr. Pipes, their legal adviser, advised him to accept payment of the notes without interest, this should be done and it was done. They very soon learned from Mr. Pipes that he had sent no such message by defendant. We feel certain that defendant did make the statement attributed to him. Plaintiff had insisted upon interest from date of notes and surely something was said or done to induce him to recede from this position. Certainly he would not have done so on the simple statement of defendant that Mr. Pipes wanted to see him. When plaintiff finally became aware of defendant's deception in this connection, he realized that he had been treated unfairly by him all along and determined to invoke the equitable power of the courts to attain deserved relief.
The testimony bearing upon the points at issue is quite conflicting, but, as is generally true, in cases of this character, there are some admitted facts and not a few pertinent circumstances which when taken together, have sufficient probative weight to serve as a basis for a just judgment.
To begin with, defendant's testimony has in a material way been discredited. When the conclusion is reached that he practiced deception in one instance the task of determining whether or not he did so in other instances is made less difficult. He voluntarily paid interest on the first note maturing. This indicates strongly that he knew he owed the interest. To get possession of the other two notes without paying interest, he delivered to plaintiff a false message as emanating from Mr. Pipes; and with regard to what was said by Mr. Pipes when he called plaintiff on the *Page 53 
telephone at time the deed was signed, he gave the following testimony which, on its face, is absurd, to-wit:
"Q. After this deed was prepared that you testified about this morning, did Mr. Pipes telephone Albert? A. Yes, sir; he telephoned him.
"Q. Do you remember any conversation he had? A. I don't remember everything. I do remember him holding the deed up and talking to Mr. Britton; he read the deed to him, I know that. It was the note rather; it was the note there for so much $144.00 a year with interest from maturity.
"Q. Now, which did he have, the notes, or did he have the deed or did he have both? A. Well now, for me to say, I think it was a deed. I don't know whether it was the deed or the note but I know he read one of them to him. I imagine it was the note though, I think."
* * * * *
"Q. Now, you testified awhile ago that you had heard me read one over the telephone to Albert Britton, do you know which one it was? A. I said I didn't know whether you referred to the note or the deed. I know you read that about the notes being for $144.00 a year.
"Q. But I did have something up before me reading it? A. Yes, sir."
Mr. Pipes testified positively that he did not read anything to plaintiff over the telephone, and doubted if he would have understood it had he done so. The transaction was between two negroes in whom he had equal confidence. He merely desired to know from plaintiff if he was authorized to affix his signature to the deed.
There is another circumstance which lends support to plaintiff's contentions. He has had considerable business dealings and has often taken notes in connection with business transactions. He testified that he never took a note that did not bear interest from date. He had one thousand eight hundred fifty ($1,850) dollars invested in this property. It was yielding sixteen ($16) dollars per month rent, or one hundred ninety-two ($192) dollars per annum. It is unreasonable to think he would have sold the property on so long a term of credit with the annual payments much less than the rent it was annually yielding. To have done so would in effect have been equivalent to giving it away. It is scarcely possible that one experienced in selling real estate would have agreed to a sale on the conditions urged by defendant.
In answer, defendant pleads that because plaintiff had possession of the notes for some two years without taking action to correct them and the deed, he is now estopped from doing so. The facts and circumstances of the case are such that delay in filing suit should not be given the effect contended for. Plaintiff can neither read nor write. It is not certain he discovered the errors before the second note matured. And since defendant paid interest on the first note maturing, naturally plaintiff assumed that the note so stipulated and that others of the series were of same tenor.
In the alternative, defendant prays that since the minds of the parties did not concur as to the price of sale and interest on the notes, the purported sale should be rescinded and the parties restored to the status occupied by them with respect thereto at date of its execution. We have reached the conclusion that there was no lack of agreement between the parties but that the deed and notes do not wholly express the agreement.
It is a well fixed rule of law in cases of this and similar character that before the instrument may be reformed, the right to have such done should clearly appear. Rodgers v. S.H. Bolinger Company, Ltd., 149 La. 545, 89 So. 688; Landeche Bros. Company, Ltd., v. New Orleans Coffee Company, Ltd., 173 La. 701,138 So. 513, 515, and cases therein cited.
In this latter case, the general rule is well expressed in the following language, viz:
"When parties reduce their agreements to writing, and when such writing exhibits no uncertainty or ambiguity as to the nature, extent, or object of the agreement, it is presumed that the document expresses their true intent; and, in the absence of an allegation of fraud, error, or mistake, their intents and purposes cannot be sought outside the four corners of the instrument."
It is said in Wm. R. Ker, Administrator, et al. v. T.E. Evershed et al., 41 La.Ann. 15, 6 So. 566, 567, that:
"When the instrument is free from any patent or latent ambiguity, parol evidence cannot be received to vary or contradict it.
"Courts of equity, however, have established a special branch of jurisdiction under *Page 54 
which, when it is made clearly to appear that through fraud or error the written instrument has been made to express a different purpose from that which the parties had agreed on and intended to embody therein, such mistake may be corrected, and the writing may be reformed to express the real intention of the parties."
In Prejean v. Richard, La.App., 158 So. 693, it was held that error in time from which interest on notes should run could be corrected where proof warranted a finding that error was committed in the preparation and signing of act of sale.
But the facts of the present case differentiate it from any we have read. In each of the reported cases, so far as our research has extended, the complaining grantor was present and signed the instrument after reading it or having had opportunity to do so or having heard it read. In such circumstances, the rule should be strictly adhered to, but in the present case the reason of the rule does not exist. A simple preponderance of the testimony only is necessary to entitle the grantor to relief.
As it was the agreement of the parties that the deferred portion of the price should be paid within twelve (12) years in annual installments equivalent to not over twelve ($12) dollars per month, it is reasonable to assume that had the act of sale and notes been drawn in keeping with the agreement the last note maturing would have been for one hundred sixty-six ($166) dollars instead of one hundred sixteen ($116) dollars. This note has been paid and is in defendant's possession. It cannot be corrected. Judgment for the difference of fifty ($50) dollars will have to be rendered therefor.
Plaintiff coupled with his main demand another for judgment for two hundred sixty ($260) dollars (amount of second and twelfth notes) with six per cent (6%) per annum interest thereon from March 22, 1939, less payment of two hundred sixty ($260) dollars as of April 2, 1941. He is entitled to this relief also.
For the reasons herein assigned, the judgment appealed from is annulled, reversed and set aside; and it is now ordered, adjudged and decreed that the original act of sale, mortgage and vendor's lien, from plaintiff, Albert Britton, unto defendant, Rubin Myles, passed before W.F. Pipes, Notary Public, on March 22, 1939, referred to herein, and conveying the property described in the petition, and also the registry thereof in the conveyance and mortgage records of Ouachita Parish, Louisiana, be corrected and reformed so as to show that the price of the sale was one thousand eight hundred fifty ($1,850) dollars and that interest on the notes described therein was fixed at six per cent (6%) per annum from date.
It is further ordered, adjudged and decreed that the nine (9) unpaid notes described in said act of sale, upon presentation to the officer hereinafter named, be corrected and reformed so as to read that each bears interest at six per cent (6%) per annum from date.
It is further ordered that the Clerk of Court and ex-officio recorder of Ouachita Parish, when this judgment has become definitive, be and he is hereby authorized and directed to make the corrections and effectuate the reformations herein mentioned and described.
It is further ordered, adjudged and decreed that plaintiff, Albert Britton, do have and recover judgment against the defendant, Rubin Myles, for two hundred sixty ($260) dollars with six per cent (6%) per annum interest thereon from March 22, 1939, until paid, less a credit of two hundred sixty ($260) dollars as of April 2, 1941.
It is further ordered, adjudged and decreed that plaintiff, Albert Britton, do have and recover further judgment against the defendant, Rubin Myles, in the sum of fifty ($50) dollars with six per cent (6%) per annum interest thereon from March 22, 1939, until paid with stay of execution thereon until March 22, 1951; the right to pay same at any time prior to that date being hereby recognized.
Defendant is cast for all costs of court.
DREW and HAMITER, JJ., concur. *Page 55